[No. 4685.]

BEST v. THE ROCKY MOUNTAIN NATIONAL BANK OF CENTRAL CITY, COLORADO.

1. **Practice in Civil Actions—Bills and Notes—Plaintiffs—Real Parties in Interest.**

Under § 3 of the Civil Code, providing that "every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in this act," an action may be brought by a bank on a promissory note given in renewal of a similar note made payable to it, although such renewal note by mistake was made payable to the president of the bank, who turned it over to the bank as its property, and the latter retained it in possession at all times; notwithstanding § 5 of the code provides that one in whose name a contract is made for the benefit of another may sue without joining the person beneficially interested.— P. 153.

2.  Practice in Civil Actions—Bills and Notes—Accommodation
    Signer—Consideration—Burden of Proof—Contradictory In-
    structions.

In an action on a promissory note against the defendant, who claimed to be only an accommodation signer, although the production of the note in prima facie evidence of a consideration sufficient, if not rebutted, to maintain plaintiff's case, yet, when evidence is introduced to the contrary the burden is upon the plaintiff to satisfy the jury of a consideration by a preponderance of all the evidence; and an instruction placing the burden upon the defendant constitutes reversible error, and this notwithstanding the giving of another instruction to the contrary, as the appellate court cannot say such conflict did not work a prejudice.—P. 161.

*Error to the District Court of Gilpin County.*
*Hon. A. H. De France, Judge.*

Action by The Rocky Mountain National Bank of central City, Colorado, against John Best, Byron J. Smith and Joseph H. Smith. From a judgment in favor of plaintiff, defendant Best brings error.

*Reversed.*

Mr. Clinton Reed, Mr. L. M. Goddard, Mr. S. C. Warner and Mr. H. A. Hicks, for plaintiff in error.

Messrs. Wolcott, Vaile & Waterman, Mr. Chase Withrow, Mr. A. B. Seaman and Mr. W. W. Field, for defendant in error.

Mr. Justice Gunter delivered the opinion of the court:

This was an action against Byron J. Smith, Joseph H. Smith, and plaintiff in error, John Best, to recover upon a promissory note executed by them. There was a judgment by default against Byron J. Smith, and a verdict and judgment against Joseph H. Smith, and plaintiff in error, John Best. Two points are principally relied upon for a reversal.

1.   That plaintiff had no right to maintain the action, that is, that it was not the real party in interest under section 3, Mills' Ann. Code.  The facts pertinent to this contention were these:  In October, 1889, Joseph H. Smith and Byron J. Smith were interested in developing a mine; their bank account was overdrawn, and further funds were necessary for continuing the operation of the mine.  Defendant in error, through its then cashier, its now president Thomas H. Potter, loaned to Byron J. Smith and Joseph H. Smith $2200.00, and a note was executed, payable to it, signed by Joseph H. Smith and John Best.  As will appear hereinafter, there was evidence for plaintiff in error that he signed this note at the request of the bank as an accommodation maker, and that the object in his signing the note, and the purpose of the bank in requesting him to do so, was to enable it to negotiate the note.

There was testimony for defendant in error that John Best was a joint and several maker of the note with reference to it, and that it accepted the note upon faith of the signature of plaintiff in error. The note that was taken in 1889, was a number of times renewed.  The original note and all subsequent renewals thereafter down to March, 1893, were signed only by Joseph H. Smith and John Best, but subsequent to March, 1893, the renewal notes were signed by Byron J. Smith as well as by the two original makers above named.  Upon such renewal the old note was held until the new one was fully executed and delivered, whereupon the preceding note was surrendered to the makers.  As to the renewal note here sued on, being that of date December, 1898, an original draft of the note was sent to Joseph H. Smith at Denver to execute.  This copy of the note was misplaced, and another note was prepared in Denver, executed by Joseph H. Smith, and re-

turned to the defendant in error, in which note the name of Thomas H. Potter appeared as payee instead of the name of the defendant in error, which had appeared in all of the preceding notes. Substituting the name of the bank by that of Potter was simply an oversight of Joseph H. Smith in redrafting the note. The consideration for the original note, and all the subsequent renewals, was paid by the defendant in error. When the note sued on returned from Denver, Mr. Potter noticed that it ran to himself instead of defendant in error. The note was delivered to the bank as its property, and it has ever since been its property, and in its possession. To repeat, the undisputed testimony is that the note at the date of its execution was, and ever since has been, the property of defendant in error, and has at all times been in its possession as it was so at the time of the institution of this action.

Plaintiff in error contends that this suit should have been brought in the name of the payee of the note, Thomas H. Potter, and that it could not be brought or maintained in the name of defendant in error.

Defendant in error contends, that under section 3, *supra*, it was the real party in interest, and that the action was properly brought in its name.

The determination of this question rests upon the construction to be given the following sections of our code. Section 3 reads:

"Every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in this Act."

Section 5 prescribes:

"An executor or administrator, or trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the person or persons for whose benefit the action is prose-

cuted.   A trustee of an express trust within the meaning of this section shall be construed to include a person with whom or in whose name the contract is made for the benefit of another.''

It will be observed that section 3 provides that the action *shall* be prosecuted in the name of the real party in interest, except as otherwise provided in the Act, while section 5 prescribes, that the trustee of an express trust, which includes a person in whose name a contract is made for the benefit of another *may* sue without joining with him the person or persons for whose benefit the action is prosecuted.

Whatever conflict of authority there may be in other jurisdictions upon the right of the plaintiff to maintain this action, we think the question practically settled here in favor of the contention of the defendant in error.   The undisputed facts here are: Defendant in error is, and at all times has been, the sole owner of the note sued upon, and the note is, and has been at all times, in its possession.   The note immediately upon its execution was delivered to defendant in error as its property, and ever since such date, in such right, it has held the note.   There was no indorsement made upon the note transferring it from Potter to defendant in error.

In *Davis v. Johnson,* 4 Colo. App. 545, 547, among other questions, the validity of a decree was involved which provided for the foreclosure of the two trust deeds securing notes.   The decree was in favor of the owner of these notes, the notes had not been indorsed, they were transferred only by delivery.   It was contended that under our statute they could not be transferred by delivery so as to pass title to the purchaser.   It was contended that such a transfer did not invest the purchaser with title to the notes.   The court held that such manner of transfer did pass title, and that such holder of the note

was the real party in interest, and that an action could be maintained in her name. *Inter alia,* it said:

"But it is not true that such transfer of a note does not invest the purchaser with title. At common law he took the equitable title, and at law could sue only in the name of the last holder of the legal title; but this distinction has been abrogated by the requirement of the code that actions shall be prosecuted in the name of the real parties in interest; * * * ."

*Gumaer v. Sowers,* 31 Colo. 164, 167, was an action by an indorsee against the makers of promissory notes. The only evidence at the trial consisted in the production by plaintiff of the promissory notes, upon the back of each of which was what purported to be a written transfer by the payee to the plaintiff. The court, after holding that there was sufficient evidence through the indorsements and possession to establish the right in the plaintiff to maintain the action, said:

"If such was not the law, still, under the doctrine of *Davis v. Johnson,* 4 Colo. App. 545, the judgment in this case was right. For it was there held that under our law, and code of procedure, a note payable to order may be transferred by delivery only, and without indorsement, so as to vest in the purchaser a complete title, subject, of course, to defenses in favor of the maker existing at the time of notice of the transfer. It is also held that such purchaser can sue in his own name. This case meets with our approval."

The holding of the court of appeals in the case cited was that an indorsement was not necessary to transfer the title to a promissory note, that the title passed by delivery, and that a title so passed was sufficient to permit the holder thereof to institute a suit in his own name, he was the real party in interest

for the purpose of instituting and maintaining the action. This doctrine was expressly approved in the case we have just cited from the supreme court.

*Wescott v. Patton,* 10 Colo. App. 544, 546, was an action by the assignee against the maker on certain promissory notes. The court said:

"The only question to be determined, therefore, is: Did the answer present an issue which required a trial? Did it put in issue any fact necessary to be proven by plaintiff before she could recover judgment? We think it did not. The answer, it is true, put in issue the alleged assignment by the payee to plaintiff, but this was not essential to the plaintiff's recovery. The answer did not attempt to put in issue the allegation that plaintiff had become and was the legal owner and holder of the note for value. This was the material part of plaintiff's allegation. If she were the legal owner and holder of the note for value, and had possession of it, she was entitled to recover even though the payee may not have made any formal assignment to her. The answer expressly admitted the execution and nonpayment of the notes, and did not set up as a defense any matter which would, if admitted, defeat a recovery."

In Maxwell on Code Pleading (4th ed.), p. 22, it is said:

"It may be stated as a general proposition that where the thing in action is assigned absolutely, so that the assignee becomes in fact the owner thereof, he is the real party in interest, and it is not material whether his title is legal or equitable—he may sue in his own name."

Mr. Pomeroy in Remedies and Remedial Rights (2nd ed.), at § 138, says:

"It is no longer, consistently with the provisions of the codes, possible for one person to sue 'to the use of' another, as was common in some states.

The parties beneficially interested must themselves bring the action. There are cases which hold that when there is a trustee of an express trust, he must bring the action, and that the beneficiary can in no such case sue in his own name, at least alone. The correctness of this ruling may well be doubted. The section relative to the real party in interest is, in all the codes, imperative; while that in relation to the trustee of an express trust is permissive."

And at § 140:

"Upon the same principle, the equitable owner of a promissory note is the real party in interest within the statute, and is the proper person to sue upon it, although there may be no indorsement, and possession of the instrument is *prima facie* evidence of such ownership. In fact, wherever the spirit of the reformed system is carried out—and this is now very generally, if not universally, the case—the equity rule as to parties is freely applied to all legal actions; and this one principle will easily solve all particular cases of difficulty or doubt."

Prof. Bliss says:

"By the law merchant, the legal title to commercial paper payable to order, can pass only by indorsement, and a purchaser who would sue as a holder, must show his right as indorsee; but one may become the equitable owner without indorsement, and, as being the real party in interest, is required to sue in his own name. No particular mode of transfer is required. A written indorsement or assignment upon the back of the paper, evidencing the debt, is to be desired as matter of evidence; but so far as concerns the right of a holder to become plaintiff, the transfer may be shown by other evidence. Thus, it may be made upon a separate paper, or a verbal sale is sufficient."—Bliss on Code Pleading, § 50.

The same principle is announced in the following Colorado cases:  *Walker v. Steele,* 9 Colo. 389; *Jackson v. Hamm,* 14 Colo. 58; *Moulton v. McLean,* 5 Colo. App. 454, 462, 3 and 4; *Austin v. Snider,* 17 Colo. App. 176, 182.

Many other authorities might be cited in support of our conclusion that defendant in error was the real party in interest, and that suit is maintainable in his name, among them, *Eaton v. Alger,* 57 Barbour 189, in which there is a valuable discussion of this question.  Plaintiff in error has cited many cases as *contra* the conclusion we have reached, we will confine our consideration of them to those cited from this state.

*First National Bank v. Hummel,* 14 Colo. 259, was an action by The First National Bank of Central City to collect certain money which it had been expressly authorized to collect by Risdon, to whom the money was owing.  It was contended that the suit should have been brought in the name of the beneficial owner, Risdon.  The court held that the suit could be maintained in the name of the plaintiff, the trustee.  The holding is entirely consistent with the conclusion we have reached in this case.

*Bassett v. Inman,* 7 Colo. 270, was an action before a justice of the peace upon a promissory note alleged to have been executed and delivered by the defendant to a third party, and by the latter assigned to the plaintiff.  Also upon an account due to a third party and assigned to the plaintiff.  The principal ground of reversal relied upon was the dissolution of the attachment, but it seems to have been further contended, that the suit was not properly brought in the name of the assignee of the note and the account.  The court said the suit was properly brought in the name of the assignee, "even though the consideration of the assignment may have been a payment to

the assignor after the recovery in the suit by the assignee.'' The holding simply is, that the trustee of an express trust could sue. There is nothing in the opinion in conflict with our conclusion herein.

In *Gomer v. Stockdale,* 5 Colo. App. 489, Stockdale, the owner of lands and timber, entered into a contract with one Jackson, a mill owner, engaged in making lumber. The contract provided that Jackson might locate his mill of machinery, and such temporary structures as were essential to his milling operations, on certain parts of Stockdale's land. Stockdale sold to Jackson by the contract the right to fell trees and reduce them to lumber. As a consideration Jackson gave certain promissory notes maturing monthly, and to secure payment Jackson agreed to give a mortgage on the mill machinery. Jackson assigned the contract to Gomer, who brought suit upon this contract. The court held that as the legal title to rights created by the contract was in Gomer, an action would lie in his name. The court said:

"It has accordingly been decided that it is no infraction of this statute to bring the suit in the name of the person to whom the claim has been assigned, whether it is an open account or otherwise, although there may be annexed to the transfer the condition that when the sum is collected the whole or some part of it must be paid over to the assignor. * * *

"Since this doctrine prevails in Colorado, it is clear that Gomer had the right to bring the suit on the transferred claim. The agreement between Gomer and Jackson concerning the disposition of the proceeds did not affect the recovery."

We see nothing in this holding contrary to our conclusion in the present case. Gomer was simply

the trustee of an express trust, and under section 5 of the code, the action would lie in his name.

In *Walsh v. Allen*, 6 Colo. App. 303, Allen sued Walsh upon a promissory note; defendant insisted that on account of some understanding between Allen and Gordon, the original payee of the note, that a portion of the avails of the note when collected were to be paid to Gordon, and that plaintiff was not the real party in interest, and therefore not entitled to maintain the suit. The court held that as the legal title to the note was in Allen by reason of the assignment, the action would lie in his name.

These are all the cases cited from this jurisdiction as in conflict with the conclusion we have reached. We think no one of the cases to be *contra* such conclusion. Cases are cited from other jurisdictions, and cases can be found supporting the contention of plaintiff in error, but they conflict with the weight of authority, and conflict with the rule laid down in this state. It would serve no useful purpose to extend this opinion by reviewing them.

2. It is contended that the court committed reversible error in the giving of the instruction No. 3, whereby it placed upon defendant, John Best, the burden of showing that the note sued on was without consideration. The facts pertinent to this instruction were these: Plaintiff introduced the note signed by the defendant, John Best, Byron J. Smith and Joseph H. Smith. The defendant Best then introduced evidence tending to show that he was only an accommodation signer of the original note and all renewal notes, including the note sued on; that he signed such note at the request of the payee, the plaintiff in error, for its accommodation, and solely to enable it to negotiate the note. There was evidence for the plaintiff that defendant Best was not an accommodation maker, but a joint and several

maker, and that his signature to the note was the security upon which plaintiff relied in making the loan. An issue of fact was thus presented to the jury for determination. Who should prevail thereon depended largely upon whether credit should be given to the testimony of Potter or to that of Best. It was important for the jury to know upon whom was the burden of proof as to this issue. The court thus charged the jury at plaintiff's request:

"The jury are instructed that under the law in this case, the chief matters for them to consider, between the plaintiff and the defendant Best, are whether or not the defendant John Best signed the said note sued upon in this case, without consideration, and solely at the request, and for the benefit of, and for the accommodation of either the said Potter, or the plaintiff herein.

"And the jury are further instructed that the said promissory note itself is *prima facie* evidence that the said John Best signed the same as maker thereof for a valuable consideration, and the jury are further instructed that the burden is upon the defendant John Best to show, by a preponderance of evidence, that he signed the said note sued upon in this action solely at the request of the said Potter, and solely for the accommodation of the said Potter, or the said plaintiff, and wholly without consideration, and unless the jury believe from the evidence, that the said defendant John Best did so sign the said promissory note sued upon in this action, solely at the request of, and for the accommodation of the said Potter, or the said plaintiff, and without any consideration whatever, then their verdict must be for the plaintiff and against the defendant John Best, *  *  *."

It will be seen that the burden of the proof that the note was without consideration was thus placed

upon the defendant below. The weight of authority is clearly against the correctness in this particular of this instruction.

Daniels' Negotiable Instruments (5th ed.), § 164, says:

"Weight of Evidence. While a bill, or negotiable note, imports in itself a consideration, yet, when evidence has been introduced to rebut the presumption which it raises, the burden is upon the plaintiff to satisfy the jury upon all the evidence, and by the preponderance of the evidence, that there was a consideration, and the mere production of the instrument does not shift upon the defendant the burden of proving that there was no consideration. The production of the note, as has been said, is *prima facie* evidence of a consideration sufficient, if not rebutted, to maintain plaintiff's case. But to hold that such an admission in the note of a consideration therefor as the words 'value received' changes the burden of proof and compels defendant to assume it, would be to hold that such an admission, when made orally and when not contained in the instrument, would have the same effect."

In *Black River Savings Bank v. Edwards,* 10 Gray 387, the following instruction was approved:

"The burden of proof is on the plaintiffs to establish a consideration, and the burden does not shift from them to the defendant. A note containing the words 'value received,' in law imports a consideration, and upon the evidence of the note itself the plaintiffs are entitled to a verdict, unless there is some other evidence to affect it. The note being produced is *prima facie* evidence of a consideration, yet the burden is upon the plaintiffs to satisfy the jury upon all the evidence, and by a preponderance of the evidence, that there was a consideration."

In *Huntington v. Shute,* 62 New York 380, decided in 1902, the court said:

"The rule is well settled in this commonwealth that in an action on a promissory note, the burden of proof is on the plaintiff to establish the fact that it is given for a valuable consideration. While the production of the note with the admission or proof of the signature, makes a *prima facie* case, yet if the defendent puts in evidence of a want of consideration, the burden of proof does not shift, but remains upon the plaintiff. He must satisfy the jury by a fair preponderance of the evidence that the note was for a valid consideration."

In *Small v. Clewley,* 61 Me. 155 and 156, the court said:

"The effect of the instruction was to impose the burden of proof upon the defendant to show that there was a want of consideration for the notes, and in this respect the instruction was erroneous."

See, also, *De Lano v. Bartlett,* 6 Cush. (Mass.) 364; *Search v. Miller,* 9 Nebraska 26, 30; *Campbell v. McCormack,* 90 N. C. 491; *Bogie v. Nolan,* 96 Mo. 85; *Manistee Nat. Bank v. Seymour,* 64 Mich. 59; *Solomon v. Huey,* 1 Posey (Tex.) 265; *Stevenson v. Gunning Estate,* 64 Vt. 601, 614; *Commey v. McFarlane,* 97 Pa. St. 361.

The weight of authority is clearly in support of the contention of plaintiff in error (defendant below), that is, that the burden of proof was upon the plaintiff to show that the note was without consideration. We can see no reason for not following the prevailing doctrine. Cases are cited by defendant in error as *contra* this conclusion; some of them can be explained and reconciled, some cannot. There is no sufficient reason for taking them up and discussing them. We will confine our consideration to the two Colorado cases which are cited against our conclu-

sion. They are not in conflict with our conclusion, and do not touch the point before us.

*Perot v. Cooper,* 17 Colo. 80, was an action by plaintiff upon certain promissory notes given by one Isaac Cooper against his administratrix. Payment was the principal defense relied upon. All that is said in the opinion, in the most remote degree, bearing upon the question of consideration is this:

"The execution and delivery of the notes being admitted, the presumption would be, in the absence of proof, that they were founded upon a sufficient consideration to sustain the plaintiff's cause of action, and in addition to this, a full consideration for the notes was expressly admitted on the trial."

This language is not inconsistent with our conclusion; it simply is, that the execution and delivery of the notes being admitted, the presumption is, that they were founded upon a sufficient consideration. It does not say that, when rebutting proof going to show that there was no consideration has been introduced, the burden is not on the plaintiff to show that a valuable consideration existed for the notes. The case does not rule the question before us.

*Welch v. Mayer,* 4 Colo. App. 440. Groth & Company, to whom Welch was indebted, drew an order upon Welch payable to Mayer, which order Welch accepted. There was an attempt by the debtor Welch to show that Mayer gave no consideration for the order. The court held that the want of consideration between Mayer and the drawer, Groth & Company, was not a defense to an action on the bill or order against Welch, the drawee. The case does not go into or decide upon whom rests the burden of proof for want of consideration in a case like the one before us.

*Murphy v. Gumaer,* 12 Colo. App. 472, is not cited by appellee as sustaining its contention that

the burden of proof as to want of consideration was upon the defendant, appellant. It is well, however, to distinguish that case.

In the case we are deciding the action was brought by the payee against the maker. In such case the burden was upon the payee, the plaintiff, to show that a valuable consideration existed for the note. In *Murphy v. Gumaer,* the action was by an indorsee before maturity against the maker. In such case the burden as to want of consideration is upon the maker. A different rule obtains in this particular when the suit is by the indorsee from that which applies when the suit is by the payee. There the suit was by the indorsee, here by the payee. The distinction between the rule as to the burden of proof in the one case from that obtaining in the other is developed in §§ 164 and 165, vol. 1, Daniels on Negotiable Instruments (5th ed.).

It has been suggested that instruction No. 6, asked by defendant Best, and given, lays down the law as defendant Best contends it to be, and as we have here held it to be as to the burden of proof of consideration. If we assume that this instruction declares the law properly as to the burden of proof in the matter of consideration, which we do only for the purpose of this ruling, it is in direct conflict with instruction 3, given at the request of plaintiff; and, as we cannot say that such conflict did not work a prejudice, we must declare that instruction 3, given at the request of plaintiff, was erroneous and was not cured by instruction 6, and worked reversible error. —*Grant v. Varney,* 21 Colo. 329, 334.

The judgment will be reversed as to defendant Best.                                    *Reversed.*

Chief Justice Gabbert and Mr. Justice Maxwell concurring.